IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| AARON T. WINTERS JR., <br><br> **Plaintiff,** <br><br> v. <br><br> LAINE T. CARDARELLA and OFFICE OF THE FEDERAL PUBLIC DEFENDER, WESTERN DISTRICT OF MISSOURI, <br><br> **Defendants.** | Case No. 4:19-cv-1034-JAR |

## MEMORANDUM AND ORDER

In this removal action, Plaintiff Aaron T. Winters, Jr. alleges legal malpractice stemming from his vacated conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Before the Court is Defendants' Motion for Judgment on the Pleadings (Doc. 40) based on the doctrines of sovereign immunity and official immunity. The motion is fully briefed and the Court is prepared to rule. As described more fully below, Defendants' motion for judgment on the pleadings is granted.

**I.   Standard**

This case was originally filed in Missouri state court and Defendants removed based on diversity of citizenship.[1] Therefore, the Court applies federal procedural rules, but Missouri substantive law.[2] The Court reviews a motion brought pursuant to Fed. R. Civ. P. 12(c) under the same standard that governs Rule 12(b)(6) motions.[3] To survive a motion to dismiss brought under Rule 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise

---

[1] 28 U.S.C. § 1332.

[2] *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

[3] *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (citing *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990)).

a right to relief above the speculative level" and must include "enough facts to state a claim for relief that is plausible on its face."[4] "A pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancement will not suffice."[5] The court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[6]

The Supreme Court has explained the analysis as a two-step process. First, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[7] Thus, the court must determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[8] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[9] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

## II. Factual Allegations

The following facts are alleged in Plaintiff's Petition and assumed to be true for purposes of deciding this motion.

On January 31, 2013, Plaintiff was indicted in the United States District Court for the Western District of Missouri on a single count of felon in possession of a firearm, in violation of

---

[4] *Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[5] *Hamilton v. Palm*, 621 F.3d 816, 817–18 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[6] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

[7] *Id*. (citing *Twombly*, 550 U.S. at 555).

[8] *Id.* at 678–79.

[9] *Id*. at 679.

[10] *Id.* at 678.

18 U.S.C. § 922(g)(1).[11] The charge was based solely on Plaintiff's prior Kansas conviction for possession of marijuana with no tax stamp under K.S.A. §§ 79-5204 and -5208. On February 5, 2013, the court appointed Defendants Laine Cardarella and the Office of the Public Defender, Western District of Missouri to represent Plaintiff.

Under Kansas law, Plaintiff's maximum sentence for possession of marijuana with no tax stamp was seven months in custody. A sentence of more than twelve months for a tax stamp violation under K.S.A. § 79-5204 is only available for recidivists with three or more felonies involving offenses against persons. Plaintiff did not have any prior felony convictions involving offenses against persons. At the time of indictment, Plaintiff could not have received a sentence of more than one year for the underlying Kansas conviction, and therefore could not be a convicted felon for purposes of 18 U.S.C. § 922(g)(1) under binding Eighth Circuit precedent.[12] Plaintiff was therefore innocent of the charge in the January 31, 2013 indictment.

Defendants did not advise Plaintiff about the Eighth Circuit precedent in *Haltiwanger*, and instead advised Plaintiff that he had no defense to the charge. In reliance on this advice, Plaintiff pled guilty on July 2, 2013, without a plea agreement. He was sentenced to a 30-month custodial sentence on December 10, 2013.

On December 8, 2017, Plaintiff filed a motion to vacate his conviction under 28 U.S.C. § 2255 in the United States District Court for the Western District of Missouri, which the Government joined, arguing that he was not a convicted felon for purposes of 18 U.S.C. § 922(g), and that his conviction should therefore be vacated based on *Haltiwanger*. On February

---

[11] Under the statute, it is unlawful for a person to possess a firearm if he has been "convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1).

[12] *United States v. Haltiwanger*, 637 F.3d 881 (8th Cir. 2011).

12, 2018, the district court granted the motion and ordered Plaintiff immediately released from confinement. Plaintiff served 28 months before he was released.

## III. Discussion

Plaintiff alleges a single count against both Defendants for legal malpractice under Missouri law.[13] The Petition does not specify whether Plaintiff's claim against Cardarella is an official-capacity or individual-capacity claim. The Petition alleges that "Defendant Cardarella acted as the agent and employee of Defendant Office of the Public Defender, Western District of Missouri and acted within the course and scope of that agency and employment relationship."[14] He seeks judgment "jointly and severally, against Defendants for the damages set forth above, for his costs, pre- and post-judgment interests, [and] for punitive damages."[15]

Defendants first move to dismiss the Office of the Public Defender ("FPD") and Cardarella under the doctrine of sovereign immunity—an immunity that "protects governmental entities from tort liability [that] can be invoked when a governmental official is sued only in his or her official capacity."[16] Plaintiff responds that he does not allege an official-capacity claim against Cardarella and that if the Court construes his Petition otherwise, he should be entitled to amend and make clear that his claim against Cardarella is an individual-capacity claim. Yet Plaintiff does not dispute that his claim against the FPD is an official-capacity clam. Therefore, the Court must consider whether Plaintiff's claim against that Defendant is barred by sovereign

---

[13] The case was removed to federal court on December 27, 2019, and reassigned to the undersigned on January 31, 2020. Doc. 22.

[14] Doc. 1-1 ¶ 2.

[15] *Id.* ¶ 25.

[16] *Missouri ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. 2019) (en banc) (citing *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008) (en banc)).

immunity.[17] Any claim against Cardarella in his official-capacity would be subsumed by the claim against his employer, so there is no need to amend the Petition, or separately address an official-capacity claim against Cardarella.[18] The Court therefore considers the sovereign immunity defense as to the FPD.

Confusingly, Defendants insist that the claim against Cardarella is an official-capacity claim only, yet they also move to dismiss Cardarella under the doctrine of official immunity—an affirmative defense that applies only to individual-capacity claims.[19] An individual capacity claim alleges that liability arises from the discretionary acts or omissions of a government employee.[20] The Petition plainly alleges that Cardarella, acting in the scope and course of his employment as a public defender, committed malpractice based on his discretionary acts and omissions. The Court therefore considers whether official immunity shields Cardarella from liability on the individual-capacity claim asserted by Plaintiff.

### A. Official Capacity Claim against the Office of the Federal Public Defender—Sovereign Immunity

"Under settled principles of sovereign immunity, 'the United States, as sovereign, "is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."'"[21] Also, under Mo. Rev. Stat. §

---

[17] *Lewis v. Clarke*, 137 S. Ct. 1285, 1290–91 (2017) ("[C]ourts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign. . . . [L]awsuits brought against employees in their official capacity 'represent only another way of pleading an action against an entity of which an officer is an agent,' and they may also be barred by sovereign immunity." (quoting *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)) (citation omitted))); *see also Betts-Lucas v. Hartmann*, 87 S.W.3d 310, 327 (Mo. Ct. App. 2002) ("Sovereign immunity, if not waived, bars suits against employees in their official capacity, as such suits are essentially direct claims against the state.").

[18] *See Lewis*, 137 S. Ct. at 1291.

[19] *See, e.g.*, *Betts-Lucas*, 87 S.W.3d at 327; *Kanatzar*, 588 S.W.3d at 190.

[20] *Id.*

[21] *United States v. Dalm*, 494 U.S. 596, 608 (1990) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)).

537.600, sovereign immunity applies to public entities as such immunity was available under common law before September 12, 1977, unless immunity has been waived, abrogated, or modified by statute.[22] Sovereign immunity is not an affirmative defense under Missouri law; the plaintiff must plead specific facts "giving rise to an exception to sovereign immunity when suing a public entity."[23]

Federal Public Defender Organizations were created by the Criminal Justice Act to provide legal representation to persons financially unable to obtain adequate representation.[24] There is no "sue and be sued" provision in the Criminal Justice Act that would constitute a waiver of sovereign immunity for the FPD.[25] Plaintiff neither pleads specific facts giving rise to an exception to sovereign immunity for the FPD, nor offers an argument in response to the motion to dismiss the FPD. Accordingly, the Court finds that sovereign immunity bars Plaintiff's legal malpractice claim against the FPD, and, in turn, any official-capacity claim against Cardarella.

### B. Individual Capacity Claim Against Cardarella—Official Immunity

Defendants also move to dismiss under the doctrine of official immunity. Official immunity is an affirmative defense under Missouri law.[26] Dismissal on the basis of an affirmative defense may be warranted "if the petition clearly establishes 'on its face and without

---

[22] Mo. Rev. Stat. § 537.600; *see also Richardson v. City of St. Louis*, 293 S.W.3d 133, 136 (Mo. Ct. App. 2009).

[23] *Richardson*, 293 S.W.3d at 139.

[24] 18 U.S.C. § 3006A(a).

[25] *See Loeffler v. Frank*, 486 U.S. 549, 554 (1988) ("Congress, however, has waived the sovereign immunity of certain federal entities from the times of their inception by including in the enabling legislation provisions that they may sue and be sued."); *see also Hammer v. Fed. Pub. Defender Org. of E.D. Cal.*, No. 3:16-CV-02192-BTM-NLS, 2017 WL 3316025, at *5 (S.D. Cal. Aug. 2, 2017) ("[T]he Federal Public Defender Organization is not one such entity, as no such "sue-and-be-sued" provision applies to them.")

[26] *Richardson*, 293 S.W.3d at 139.

exception' that the claim is barred."[27] The doctrine "protects a public official from liability if that official acts within the course of his official duties and without malice. The purpose of this doctrine is to allow public officials to 'make judgments affecting the public safety and welfare' without '[t]he fear of personal liability.'"[28] Courts must be careful not to construe the official immunity doctrine "too narrowly lest they frustrate the need for relieving public servants of the threat of burdensome litigation."[29]

Plaintiff argues that Cardarella is not entitled to official immunity for the following reasons: (1) the Missouri Supreme Court's recent decision in *Laughlin v. Perry*[30] finding official immunity applies to state public defenders does not apply; (2) Cardarella's failure to research Plaintiff's underlying conviction was not a discretionary act; and (3) Cardarella acted with malice. The Court addresses these arguments in turn.

    **1.**    *Laughlin v. Perry*

In urging official immunity for Cardarella, Defendants principally rely on the Missouri Supreme Court's June 30, 2020 decision in *Laughlin* extending official immunity to state public defenders.[31] In *Laughlin*, the plaintiff filed suit against his public defenders, appointed under Missouri law to represent him in his criminal proceeding, asserting legal malpractice and breach of fiduciary duty for failure to assert a jurisdictional challenge at trial and on appeal that

---

[27] *Id.* (quoting *Sheehan v. Sheehan*, 901 S.W.2d 57, 59 (Mo. 1995) (en banc)).

[28] *Missouri ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. 2019) (en banc) (first quoting *Green v. Denison*, 738 S.W.2d 861, 865 (Mo. 1987) (en banc), *overruled on other grounds by Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 765 n.8 (Mo. 2006) (en banc); then quoting *Smith v. Berryman*, 199 S.W. 165, 167 (Mo. 1917) (en banc)) (citing *Southers v. City of Farmington*, 263 S.W.3d 603, 610 & n.7 (Mo. 2008) (en banc)) .

[29] *Id.* (quoting *Kanagawa v. Missouri ex rel. Freeman*, 685 S.W.2d 831, 836 (Mo. 1985) (en banc), *overruled on other grounds by Alexander v. Missouri*, 756 S.W.2d 539 (Mo. 1988) (en banc)).

[30] 604 S.W.3d 621 (Mo. 2020) (en banc).

[31] *Id.* at 626, 633–34.

eventually formed the basis of his writ of habeas corpus.[32] The Missouri Supreme Court considered as a matter of first impression whether official immunity applies to state public defenders.[33] The court reviewed constitutional and statutory grounds for state public defenders' duty to represent indigent defendants, the Missouri courts' treatment of public defenders as state employees, and decisions from other jurisdictions extending immunity to public defenders in determining that they are public officials and that official immunity applies under Missouri law.[34] The court also clarified what constitutes a discretionary act by public defenders for purposes of the official immunity analysis.[35]

### a. Retroactivity

Plaintiff first argues that *Laughlin* should not apply retroactively to this case, despite the general rule in Missouri that a judicial decision that changes the law should apply retroactively.[36] There are two exceptions to this general rule. First, a change to a procedural law will be applied prospectively only.[37] Second, "[i]f the parties have relied on the state of the decisional law as it existed prior to the change, courts may apply the law prospectively only in order to avoid injustice and unfairness."[38] Plaintiff argues that this second exception applies here, which requires the Court to apply the following three-part test: "(1) whether the decision establishes a new principle of law; (2) whether the purpose and effect of the new rule [would] be enhanced or

---

[32] *Id.* at 624–25.

[33] *Id.* at 626.

[34] *Id.* at 626–32.

[35] *Id.* at 627–29.

[36] *Demi v. Sheehan Pipeline Constr.*, 452 S.W.3d 211, 214 (Mo. Ct. App. 2014) (citing *Overlap, Inc. v. A.G. Edwards & Sons, Inc.*, 318 S.W.3d 219, 227 (Mo. Ct. App. 2010)).

[37] *Id.*

[38] *Id.*

retarded by retroactive application; and (3) what hardship will result to parties who relied upon the old rule if the new rule is applied retroactively."[39]

The Missouri Supreme Court acknowledged in *Laughlin* that whether public defenders are entitled to official immunity was an open question, citing three prior appellate decisions that "broached the topic" yet did not resolve the issue.[40] Therefore, the decision establishes a new principle of law insofar as it clarified how the law of official immunity applies to public defenders. Undoubtedly, the purpose and effect of the rule would be enhanced by retroactive application—this case involves a claim under Missouri law against a public defender who asserts official immunity as an affirmative defense. Declining to apply *Laughlin* would call into question the purpose and effect of the rule announced therein—that public defenders are "public employees whose official statutory duties concern the performance of discretionary acts," and are thus immune from suit if they act without malice.[41]

Plaintiff asserts that applying the new rule to him would create hardship because he relied on the law as it existed at the time he filed the case. The Court is not persuaded. While *Laughlin* resolved the unsettled issue of whether official immunity applies to public defenders, it did not reverse a previously stated rule; the law before *Laughlin* did not establish that public defenders were not immune from suit. Plaintiff points to the Missouri Court of Appeals' unpublished decision in *Costa v. Allen*, but, as *Laughlin* explains, that case carries no precedential value

---

[39] *Id.* (citing *Johnson v. St. John's Mercy Med. Ctr.*, 812 S.W.2d 845, 851 (Mo. Ct. App. 1991)).

[40] *Laughlin*, 604 S.W.3d at 626 & n.5 (first citing *Johnson v. Schmidt*, 719 S.W.2d 825, 826 (Mo. Ct. App. 1986); then citing *Costa v. Allen*, No. WD67378, 2008 WL 34735, at *5 (Mo. Ct. App. Jan. 2, 2008), *transferred to Mo. S. Ct.*, 274 S.W.3d 461 (Mo. 2008)); and then citing *Kuehne v. Hogan*, 321 S.W.3d 337, 344 (Mo. Ct. App. 2010) (Ellis, J., concurring)).

[41] *Id.* at 634.

because it was transferred to the Missouri Supreme Court.[42] Plaintiff is simply mistaken that "[n]o such official immunity defense existed under Missouri law for public defenders at the time of Defendant's underlying conduct."[43] The issue was ripe for litigation under Missouri law prior to *Laughlin*, so Plaintiff could not have relied on an "old rule" when he filed this action.[44]

Moreover, as a Court sitting in diversity, this Court's role is to predict how the highest court in the state would decide an issue.[45] "A federal court must follow the announced state law in a diversity action unless there are very persuasive grounds for believing the state's highest court would no longer adhere to it."[46] In predicting whether the Missouri Supreme Court would find that official immunity shields federal public defenders from tort liability, the Court will consider its most recent decision in *Laughlin* finding that the doctrine applies to state public defenders. This decision provides clear guidance about how the Missouri Supreme Court would rule in this matter.

### b. Public Official

Official immunity in Missouri applies to "public officials."[47] Plaintiff argues that *Laughlin* does not apply here because its conclusion that public defenders are public officials

---

[42] *Id.* at 626 n.5; *see also Kuehne*, 321 S.W.3d at 344 (Ellis, J., concurring) ("[T]his Court addressed the subject in an earlier appeal of our companion case today, *Costa v. Allen*, No. W.D. 71055, 2008 WL 34735 (Mo.App.W.D. Jan. 2, 2008); but after opinion in this Court, the Missouri Supreme Court accepted transfer, rendering this Court's opinion in that case for naught and of no precedential value").

[43] Doc. 43 at 11.

[44] *Compare Costa*, 2008 WL 34735, at *5 ("[A]ttorneys in the office of the public defender are not shielded from liability by the doctrine of official immunity, and the trial court's dismissal with prejudice must be reversed."); *with Kuehne*, 321 S.W.3d at 344 (Ellis, J., concurring) ("[*Costa*] suggests that the result it reached was consistent with the majority of foreign jurisdictions. However, a careful review of case law from around the country leads me to the conclusion that the vast majority of jurisdictions extend immunity to public defenders in one form or another, whether it be judicial immunity, statutory immunity, official immunity, or some variation thereof. Moreover, some of the case law relied on in our prior opinion is mischaracterized.").

[45] *See Williamson v. Hartford Life & Acc. Ins. Co.*, 716 F.3d 1151, 1154 (8th Cir. 2013) (quoting *Smith v. Chem. Leaman Tank Lines, Inc.*, 285 F.3d 750, 754 (8th Cir. 2002)).

[46] *Id.* (citing *Smith*, 285 F.3d at 755).

[47] *See, e.g.*, *Missouri ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. 2019) (en banc).

turned on an analysis of Missouri's public defender system, whereas Cardarella was appointed under the federal public defender system. Plaintiff argues that under the Supreme Court's decision in *Ferri v. Ackerman*,[48] federal public defenders are not entitled to immunity in state malpractice actions brought by former clients. But the Supreme Court explicitly stated in *Ferri* that it was not "concerned with the question whether Pennsylvania may conclude as a matter of state law that respondent is absolutely immune, because "when state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state rule is in conflict with federal law."[49] Instead, "[t]he narrow issue presented to this Court is whether federal law in any way pre-empts the freedom of a State to decide the question of immunity in this situation in accord with its own law."[50] The Court determined that federal law does not provide absolute immunity, such as the federal officer immunity that applies to a prosecutor or judge, for court-appointed counsel in a state malpractice case.[51]

*Ferri* does not hold that a federal public defender is not a public official for purposes of Missouri's official immunity doctrine. It explicitly confined its ruling to whether federal public defenders are absolutely immune from suit under federal law, which is not at issue here. Instead, the Court is guided by decisions applying Missouri law on official immunity. In *Laughlin*, the Court considered the constitutional and statutory mandate for state public defenders before concluding that they are public officials. The federal and state constitutional mandate examined

---

[48] 444 U.S. 193 (1979).

[49] *Id.* at 198.

[50] *Id.* at 197.

[51] *Id.* at 205.

11

in *Laughlin* applies equally to federal public defenders. Under both the United States and Missouri Constitutions, criminal defendants have the right to assistance of counsel.[52] The Missouri Supreme Court also examined the Missouri public defender service, as defined by the Missouri General Assembly, and determined that the Missouri public defenders in that case "were acting pursuant to their constitutionally and statutorily mandated duties by representing Laughlin during his trial, appeal, and post-conviction proceedings."[53] The Court predicts that the Missouri Supreme Court would likewise conclude that federal public defenders are public officials after analyzing the statutory basis for the federal public defender system.

Congress passed 18 U.S.C. § 3006A in furtherance of the constitutional mandate of providing adequate representation to criminal defendants:

> Each United States district court, with the approval of the judicial council of the circuit, shall place in operation throughout the district a plan for furnishing representation for any person financially unable to obtain adequate representation in accordance with this section. Representation under each plan shall include counsel and investigative, expert, and other services necessary for adequate representation.[54]

Thus, the FPD "falls under the purview of the judicial branch," which in turn "has created ethical rules of conduct that govern their behavior."[55] The statute requires each circuit court:

> to appoint one Federal Public Defender per district and to set his or her salary. In turn, the Federal Public Defender may appoint assistant FPDs in a number approved by the circuit court of appeals. The Federal Public Defender may also appoint other staff "in such number as may be approved by the Director of the Administrative Office of the United States Courts." In addition to overseeing the staffing of Federal Public Defender Organizations,

---

[52] *See Laughlin v. Perry*, 604 S.W.3d 621, 626 (Mo. 2020) (en banc) (discussing U.S. Const. amend. VI and Mo. Const. art. I, sec. 18(a)); *see also Gideon v. Wainwright*, 372 U.S. 335, 341 (1963).

[53] *Laughlin*, 604 S.W.3d at 627.

[54] 18 U.S.C. § 3006A(a).

[55] *Fajardo v. Barrera*, No. 15-333 JCH/KBM, 2016 WL 10592168, at *2 (D.N.M. Feb. 12, 2016) (citing *Guide to Judiciary Policy*, vol. 2).

> the judicial branch also reviews its internal operations. For
> example, each Federal Public Defender Organization must submit
> reports of its activities and financial position and its proposed
> budget to the Director of the Administrative Office of the United
> States Courts. In addition, the Director of the Administrative
> Office submits a budget for each organization for each fiscal year
> and distributes money among them accordingly. Finally, the
> statute creating the office specifically provides that neither the
> Federal Public Defender nor any attorney so appointed by him may
> engage in the private practice of law.[56]

The Court finds that the statutory framework provided by the Criminal Justice Act, and the judicial branch's management of the FPD, counsel in favor of finding that federal public defenders are public officials for purposes of official immunity under Missouri law. The federal public defender system is at least as "elaborate" as the state public defender system the Missouri Supreme Court examined in *Laughlin*.[57] The Missouri Supreme Court relied on the fact that the Public Defender Commission, whose members are appointed by the governor with the advice and consent of the Senate, determine Missouri public defenders' compensation, and that the Missouri public defenders' budget is provided through annual appropriations approved by the governor and the general assembly.[58] Similarly, federal public defenders' salaries and budgets are governed by the federal government—either the circuit courts or the Administrative Office. And, like in Missouri, the judicial branch regulates ethical rules of conduct for federal public defenders.[59] For all of these reasons, the Court predicts that the Missouri Supreme Court would find that federal public defenders are public officials when acting pursuant to their duties under 18 U.S.C. § 3006A by representing a criminal defendant at trial and on appeal.

### 2. Discretionary Acts

---

[56] *Id.* (quoting 18 U.S.C. § 3006A) (citations omitted).

[57] *Laughlin v. Perry*, 604 S.W.3d 621, 626 (Mo. 2020) (en banc).

[58] *Id.*

[59] *Id.*

Plaintiff argues that Cardarella was not performing discretionary acts, but instead, performed a ministerial duty when he failed to research the underlying conviction upon which Plaintiff's felon-in-possession charge was based. The Court finds no merit to this argument. As *Laughlin* explains, a discretionary act "requires the exercise of reason in the adaption of means to an end and discretion in determining how or whether an act should be done or course pursued."[60] In contrast, a ministerial act

> has long been defined as merely clerical. And this Court has noted that a ministerial duty compels a task of such a routine and mundane nature that it is likely to be delegated to subordinate officials. For more than a century, this Court has held that a ministerial or clerical duty is one in which a certain act is to be performed upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority, and without regard to . . . judgment or opinion concerning the propriety or impropriety of the act to be performed. Thus, the central question is whether there is any room whatsoever for variation in when and how a particular task can be done. If so, that task—by definition—is not ministerial.[61]

Here, the Petition alleges that Cardarella's malpractice was the failure to conduct adequate legal research about the sufficiency of Plaintiff's prior conviction as a basis for the felon-in-possession charge to which he pled guilty. The Petition alleges that the *Haltiwanger* decision constitutes "basic legal research," and Plaintiff argues that Cardarella had a clear and unequivocal duty to assert it as a defense.[62] But these allegations do not concern purely clerical tasks, nor tasks that would be delegated to a subordinate. The Petition alleges that Cardarella failed to keep himself abreast of developments in the law and thus mistakenly advised Plaintiff to plead guilty to the felon-in-possession charge. Plaintiff's argument that the malpractice would have been avoided but for basic research "conflates whether [counsel's] actions were

---

[60] *Id.* at 628 (quoting *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008) (en banc)).

[61] *Id.* (quoting *Missouri ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 191 (Mo. 2019) (en banc)).

[62] Doc. 1-1 ¶ 21.

discretionary in nature for official immunity purposes with whether they violated the standard of care in performing those discretionary acts to be found negligent. Whether a party is immune from suit precedes whether a party has violated the standard of care."[63] Otherwise, "[i]f every act which deviates from a professional norm were to be categorized as 'ministerial,' immunity would seldom shield professional discretion."[64] The Court declines to put the cart before the horse, and predicts that the Missouri Supreme Court would follow its reasoning in *Laughlin* and find that Cardarella's failure to challenge the underlying conviction in Plaintiff's criminal case was a discretionary act entitled to official immunity.

### 3. Malice

Finally, Plaintiff argues that official immunity does not apply because the Petition plausibly alleges that Cardarella acted with malice or bad faith. Official immunity does not shield a public employee from acts committed in bad faith or with malice.[65] Malice means "reckless indifference to the rights of others."[66] In this context, bad faith or malice

> ordinarily contains a requirement of actual intent to cause injury. . . . "[The] defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another. 'An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others.'"[67]

---

[63] *Laughlin*, 604 S.W.3d at 629.

[64] *Id.* (quoting *Canon v. Thumudo*, 422 N.W.2d 688, 705 (Mich. 1988)).

[65] *See McCormack v. Douglas*, 328 S.W.3d 446, 450 (Mo. Ct. App. 2010) (citing *Southers*, 263 S.W.3d at 612).

[66] *Moore v. City of Ferguson*, 213 F. Supp. 3d 1138, 1149 (E.D. Mo. 2016) (quoting *Estate of Snyder v. Julian*, 789 F.3d 883, 887 (8th Cir. 2015)).

[67] *Missouri ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. 1986) (en banc) (quoting *Grad v. Kaasa*, 321 S.E.2d 888, 890–91 (N.C. 1984)).

Bad faith requires more than negligence.[68] It requires "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another."[69]

Plaintiff points to his allegation in the Petition that Cardarella "demonstrated a complete indifference to and conscious disregard for the Plaintiff's rights,"[70] in support of his contention that he plausibly alleged malice or bad faith. But this is a legal conclusion; he does not point to factual allegations that support it. Instead, the Petition alleges that Cardarella failed to perform basic research that would have led him to challenge the indictment and avoid Plaintiff's guilty plea. Plaintiff alleges that it was "carelessness and negligence" that caused his guilty plea.[71] There are no facts alleged that lead to a reasonable inference of actual intent to injure, prejudice, mislead, or deceive. Plaintiff alleges no facts that Cardarella purposefully failed to research the underlying conviction, intending to harm Plaintiff. Without factual allegations to support it, Plaintiff's statement that Cardarella "demonstrated a complete indifference to and conscious disregard for the Plaintiff's rights" is a naked assertion which the Court is not bound to accept as true.

In the alternative, Plaintiff asks for leave to amend to add allegations of malice, arguing that because *Laughlin* is a new rule, he could not have known about the need to plead malice at the time he filed the Petition. But Plaintiff fails to abide by W.D. Mo. Rule 15.1(a), which requires a motion with an attached proposed pleading for the Court to review. Nor does he

---

[68] *Id.* (quoting *Catalina v. Crawford*, 483 N.E.2d 486, 490 (Ohio Ct. App. 1984)).
[69] *Id.*
[70] Doc. 1-1 ¶ 24.
[71] *Id.* ¶ 22.

include any description of the additional facts he might allege that would justify an amended pleading.

Even if the Court entertained Plaintiff's request for leave to amend embedded in his response, he fails to meet the governing standard. "Leave to amend should be freely granted unless there are compelling reasons 'such as undue delay, bad faith, or dilatory motive . . . undue prejudice to the non-moving party, or futility of the amendment.'"[72] The Court agrees with Defendants that Plaintiff's request comes after undue delay, that the request would cause Cardarella undue prejudice, and that the amendment would be futile.

The deadline to amend the pleadings was September 1, 2020, well before Defendants' motion for judgment on the pleadings was filed.[73] Importantly, the defenses raised in the motion were first asserted in Defendants' Answer filed on March 13, 2020.[74] *Laughlin* was decided on June 30, 2020. As described above, while *Laughlin* definitively applied official immunity to public defenders for the first time, it did not change the general standard for official immunity. Thus, the Court is not persuaded by Plaintiff's argument that he could not have known of the need to plead facts supporting malice at the time the Petition was filed.

Moreover, allowing amendment at this late date would be prejudicial to Cardarella. This case has been on file for almost one year, and Cardarella pled the official immunity defense in March 2020. Discovery ensued, and Defendants waited for the amendment deadline to pass before moving to dismiss on their immunity defenses. A dispositive motion deadline has been set for April 1, 2021. Reopening the pleadings at this late date, to allow Plaintiff to allege facts

---

[72] *Alternate Fuels, Inc. v. Cabanas*, 538 F.3d 969, 974 (8th Cir. 2008) (quoting *Brown v. Wallace*, 957 F.2d 564, 566 (8th Cir. 1992)).

[73] Doc. 27.

[74] Doc. 28.

that he would have been aware of at the time of the original pleadings, would surely cause Cardarella undue prejudice.

Finally, the Court finds that amendment would be futile. The only amendment that would save this Petition from dismissal are factual allegations that Cardarella acted with intent to injure, prejudice, mislead, or deceive. There are simply no allegations in the Petition, or discovery set forth in the request for leave to amend, that would lead the Court to conclude that Plaintiff could allege facts to support that Cardarella's failure to conduct legal research about his prior conviction, as alleged in the Petition, was done intentionally to harm Plaintiff. Instead, the factual allegations, and Plaintiff's response to the pending motion, support a negligence claim, which is shielded by the doctrine of official immunity. Plaintiff's request for leave to amend is thus denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion for Judgment on the Pleadings (Doc. 40) is **granted**. Plaintiff's request for leave to amend is denied.

**IT IS SO ORDERED.**

Dated: December 21, 2020

                                                   S/ Julie A. Robinson
                                                 JULIE A. ROBINSON
                                                 CHIEF UNITED STATES DISTRICT JUDGE